UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GULFPORT ENERGY CORPORATION,

Plaintiff,

v.

SHUGERT FAMILY INVESTMENTS, LLC,

Defendant.

Case No. 2:20-cv-02469

**PETITION TO CONFIRM ARBITRATION AWARD**

Gulfport Energy Corporation ("Gulfport") by and through its undersigned counsel, respectfully petitions this Court as follows:

**INTRODUCTION**

1. This is a petition to confirm an arbitration award issued by the American Arbitration Association ("AAA") in *Shugert Family Investments, LLC v. Gulfport Energy Corporation*, AAA Case No. 01-17-0001-8182 (the "Shugert Arbitration").

2. The Shugert Arbitration addressed and resolved claims related to oil and gas leases with "Market Enhancement Clauses" under Ohio law.

3. In the Shugert Arbitration, Shugert Family Investments, LLC f/k/a K & S Shugert Family Farm Limited Partnership (the "Shugerts"), brought five claims against Gulfport: (1) declaratory judgment; (2) breach of contract; (3) conversion; (4) breach of implied covenants; and (5) unjust enrichment. All five claims related to the Shugerts' allegations that Gulfport improperly deducted post-production costs from royalty payments owed under oil and gas leases. Gulfport brought its own demand for declaratory relief (and counterclaimed) that Gulfport has paid the Shugerts' royalties consistent with the language of the leases.

4. The parties jointly selected a sole arbitrator in this case, Southern Methodist University Dedman School of Law and George W. Hutchinson Chair in Energy Law Professor John S. Lowe.  Professor Lowe has taught courses on oil and gas and gas law contracts for over thirty years and is the editor or author of many leading articles and books, including *Oil and Gas Law in a Nutshell, Cases and Materials on Oil & Gas Law*, and *Defining the Royalty Obligation*, 49 SMU Law Review 223 (1996).

5. On May 10, 2020, Professor Lowe (the "Arbitrator") issued the final award (the "Arbitration Award").  Ex. A.  The Arbitration Award incorporated the Arbitrator's previous orders and interim awards, Ex. A-1 to A-5, including those finding that gas from the Shugerts' wells is marketable at or near the wellhead and that the Shugerts had failed to prove that Gulfport had improperly deducted post-production costs from the Shugerts' royalty payments, *see* Ex. A-4 & A-5, and denied all of the Shugerts' remaining claims, Ex. A.

6. The Federal Arbitration Act ("FAA") permits a party to seek confirmation or vacatur of an arbitration award.  9 U.S.C. §§ 9 & 10.  Gulfport thus initiates this petition for confirmation of the Arbitration Award.

7. The Sixth Circuit has called a court's review of an arbitrator's decision "one of the narrowest standards of judicial review in all of American jurisprudence." *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 305 (6th Cir. 2008) (quoting *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005)).  For this reason, courts routinely confirm arbitration awards.  *See id*. at 298 (affirming district court's confirmation of arbitration award); *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 605 (6th Cir. 2016) (affirming confirmation of arbitration award and noting that even "a legal error committed by an arbitrator is insufficient for vacatur under the FAA"); *Hale v. Chesapeake Expl., L.L.C.*, No. 4:18CV2217, 2019 WL 1863670, at *3, *5 (N.D.

Ohio Apr. 25, 2019) (confirming the arbitration award and noting that the court's review is "limited"); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Barker*, No. 1:15-cv-328, 2016 WL 776605, at *3–4 (S.D. Ohio Feb. 29, 2016) (confirming arbitration award and noting that "the plain language of the [FAA] presumes that arbitration awards will be confirmed") (quoting *Wachovia Sec., Inc. v. Gangale*, 125 F. App'x 671, 676–77 (6th Cir. 2005))). As the Sixth Circuit has explained, "[i]f a court can find any line of argument that is legally plausible and supports the award then it must be confirmed. Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside." *Elec. Data Sys. Corp. v. Donelson*, 473 F.3d 684, 691–92 (6th Cir. 2007) (citation omitted) (affirming confirmation of arbitration award).

8. The FAA "expresses a presumption that arbitration awards will be confirmed." *Uhl*, 512 F.3d at 305 (citation omitted). Specifically, the FAA explains that if a party moves to confirm an arbitration award in court, "the court ***must grant*** such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9 (emphasis added).

**PARTIES**

9. Gulfport—an independent oil and natural gas exploration and production company with leasehold interests in the Utica Shale—is a publicly-traded corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Oklahoma City, Oklahoma, and is thus a citizen of the states of Delaware and Oklahoma.

10. Shugert Family Investments, LLC f/k/a K & S Shugert Family Farm Limited Partnership is a limited liability company organized under the laws of the State of Ohio and is authorized to do business therein. The Shugerts own interests in certain oil and gas leases for properties in Kirkwood, Warren, and Union Townships in Belmont County, Ohio.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action under 9 U.S.C. § 1 *et. seq.* and 28 U.S.C. § 1332(a). There is complete diversity between the parties, and the amount in controversy, exceeds $75,000, exclusive of interests and costs.

12. Venue for an action to confirm an arbitration award is proper in any district under the general venue statute, and thus is proper in this Court. *See Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 195 (2000).

## FACTS

### The Leases Between Gulfport And The Shugerts

13. The Shugerts are landowners of property in Belmont County, Ohio. The Shugerts entered into four substantially similar oil and gas leases ("Leases") with Gulfport, all of which are governed by Ohio law.[1] Exs. B–E.

14. The Leases give Gulfport the right to produce and sell oil and gas found on the Shugerts' land, and, in exchange, the Shugerts receive a 15% royalty interest in the oil and gas produced. *See* Ex. B at GPOR_Shugert_00003591.[2]

15. The Leases' Exhibit A contains a Market Enhancement Clause ("MEC") which governs Gulfport's payment of royalties to the Shugerts and states in pertinent part:

> [A]ll oil, gas or other proceeds accruing to the [Shugerts] under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, dehydrating and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in

---

[1] Gulfport acquired an interest in the Leases from the original Lessee, Patriot Land Company, LLC.

[2] Each Lease contains identical substantive provisions, including Royalty and Market Enhancement Clauses. Ex. B at GPOR_Shugert_00003591, 597; Ex. C at GPOR_Shugert_00003606, 612; Ex. D at GPOR_Shugert_00006094, 100; Ex. E at GPOR_Shugert_00005834, 40. Therefore, this Petition refers to only one of the Leases for simplicity.

>enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from [Shugerts'] share of production so long as they are based on [Gulfport]'s actual cost of such enhancements. However, in no event shall [the Shugerts] receive a price that is less than, or more than, the price received by [Gulfport].

Ex. B at GPOR_Shugert_00003597.

### Gulfport's Operations and Royalty Payment Practices

16. Gulfport is the operator of the Shugerts' wells and produces hydrocarbons from them. Although Gulfport could sell the hydrocarbons from the Shugerts' wells at or near the wellhead, Gulfport can obtain a better price—which benefits both Gulfport and the Shugerts—by selling the gas downstream. To obtain that higher downstream price, Gulfport contracts with unaffiliated third parties to aggregate and refine the gas stream, resulting in products sold at various points downstream of the wellhead.

17. To pay royalties to the Shugerts, Gulfport calculates a wellhead price using the "netback method." That wellhead price is based on the same price Gulfport receives from third parties for the sales of residue gas and natural gas liquids. The netback price represents a weighted average sales price of the various downstream sales, less the Shugerts' pro-rata share of the actual transportation and refining costs (*i.e.*, costs for gathering, processing, fractionation, compression, and transportation) that Gulfport incurs in order to obtain those higher downstream sales prices. Such costs, which are commonly referred to as "post-production costs," enhance the value of the already marketable product and allow the Shugerts to receive a better price than if Gulfport were to sell the hydrocarbons at or near the wellhead. Gulfport does not deduct any fees (including, for example, a marketing fee) other than those it pays to arm's-length third parties.

### Procedural History

18. The procedural history of this action began in January 2017, when the Shugerts filed a complaint in the Court of Common Pleas in Columbiana County, Ohio. Complaint, *Shugert*

5

*Family Invs., LLC v. Gulfport Energy Corp.*, No. 17-CV-9 (Ohio Ct. Com. Pl. Columbiana Cty. Jan. 9, 2017). Gulfport removed the action to the Northern District of Ohio. Notice of Removal, *Shugert Family Invs., LLC v. Gulfport Energy Corp.*, No. 4:17-cv-00263-BYP (N.D. Ohio Feb. 8, 2017), ECF No. 1. Because the Leases contained an arbitration clause, the Shugerts voluntarily dismissed their complaint, without prejudice, which was approved by the court. Order Approving Pl.'s Notice of Dismissal, *Shugert Family Invs., LLC v. Gulfport Energy Corp.*, No. 4:17-cv-00263-BYP (N.D. Ohio Mar. 1, 2017), ECF No. 9.

19. Shortly after dismissing its complaint, on March 27, 2017, the Shugerts filed an arbitration demand containing five claims: (1) declaratory judgment; (2) breach of contract; (3) conversion; (4) breach of implied covenants; and (5) unjust enrichment.

20. Among other allegations, the Shugerts claimed that Gulfport underpaid royalties by assessing and deducting costs not permitted under the Leases, including those for gathering, compression, processing, fractionation, and transporting the gas. The Shugerts alleged that those costs did not enhance the value of the gas, but instead were necessary to transform the product into marketable form. In the alternative, the Shugerts contended that the costs were not permissible because they did not enhance the value.

21. Gulfport filed a simultaneous arbitration demand for declaratory relief and counterclaimed, alleging that because the gas from the Shugerts' wells is marketable at or near the wellhead, and because the post-production costs enhance the value of the marketable gas, Gulfport is and was entitled to include a pro rata share of post-production costs in calculating the royalties due.

**The Arbitration Award**

22. The Arbitrator bifurcated the Shugert Arbitration proceeding into two phases, which addressed three questions: (1) how to determine whether post-production costs have "enhanced the value" of the gas within the meaning of the MEC; (2) where the gas produced from the Shugerts' property is "marketable" within the meaning of the MEC; and (3) whether post-production costs have "enhanced the value" of the gas within the meaning of the MEC. Ex. A-1, ¶ 2.

23. Over the course of the Shugert Arbitration, the Arbitrator received each party's arguments, evidence, and testimony. For each of the two phases, the parties conducted fact and expert depositions and presented expert reports, which were provided to the Arbitrator. Each phase culminated in a one-day in-person evidentiary hearing before the Arbitrator with testimony from fact and expert witnesses. Those evidentiary hearings came after the parties submitted extensive briefing: on the first question, the parties submitted opening and rebuttal briefs; on the second and third questions, the parties submitted both pre-and post-hearing briefs with rebuttal as well.

24. After considering the parties' arguments, evidence, and testimony, the Arbitrator issued his rulings on each of the three questions in a series of orders and interim awards, before finally entering a Final Award in Gulfport's favor.

25. On May 8, 2018, the Arbitrator held that under the MEC, "Gulfport bears all costs of making a marketable product. Once there is a marketable product, however, subsequent post-production costs that actually result in higher royalties to [the Shugerts] are deductible by Gulfport in calculating royalty." Ex. A-2, ¶ 2. In addition, the Arbitrator found "that the burden of proof under Ohio law is on [the Shugerts] to show that Gulfport has not properly paid royalty." *Id.* ¶ 4.

26. On March 8, 2019, the Arbitrator concluded that "the gas from the Shugert[s'] wells is in marketable form at or near the lease boundaries." Ex. A-4, ¶ 12. In so concluding, the Arbitrator rejected the Shugerts' arguments that "processing is necessary to put the gas into marketable form," and that "the gas stream is not marketable until it has been processed to comply with all interstate pipeline quality standards." *Id.* ¶ 17.[3] Thus, the Arbitrator found that "Gulfport may deduct the Shugerts' pro-rata share of all post-production costs, including processing costs, so long as those costs enhance the value of the gas." *Id.* ¶ 19. The Arbitrator additionally found that "Gulfport alone pays any and all on-lease costs incurred to transform the gas . . . into marketable products . . . and does not take any deductions until the gas is in marketable form." *Id.* ¶ 19.

27. On April 4, 2020, the Arbitrator rejected a number of the Shugerts' arguments that Gulfport had not enhanced the value of the Shugerts' gas within the terms of the MEC. Ex. A-5.

28. ***First***, the Arbitrator found that, based on the evidence presented, the Shugerts were forced to "agree that Gulfport's post-production costs for transportation from the tailgate of the processing plant to downstream markets enhance value." *Id.* ¶ 5.

29. ***Second***, as for "costs incurred prior to the tailgate of the processing plant (*i.e.*, gathering, compression, and processing)" that the Shugerts claimed did not enhance value, the Arbitrator explained that there are "two limitations on Gulfport's right" to deduct those costs: (1) they must be based on the "actual costs of such enhancements"; and (2) the fees deducted "must

---

[3] In his April 4, 2020 award, the Arbitrator confirmed that "'[m]arketable form' in the MEC is a reference to the quality of the natural gas, and does not require either that there be an actual market at the point that the product meets the 'marketable form' standard or that the product be delivered to the market." Ex. A-5, ¶ 5.

enhance 'the value . . . to receive a better price' than the price that would have been obtainable at the point in the process that the . . . gas w[as] in marketable form." *Id.* ¶¶ 5, 9-10.

30. As to the first limitation, the Arbitrator found "[t]here was no testimony" that Gulfport charged the Shugerts any fees other than those it pays to arm's-length third parties. *Id.* ¶ 9.

31. As to the second, the Arbitrator explained that "a purchaser of wet gas at or near the lease would not be willing to pay the full netback price. Such a buyer would not pay the full netback amount but only a lesser price that reflects a discount for marketing costs and a profit margin." *Id.* ¶ 7. He confirmed that "the netback valuation methodology works to increase the value of [the Shugerts'] royalty." *Id.*

32. The Arbitrator issued his final Arbitration Award on May 10, 2020. Ex. A. The Arbitration Award incorporated "all preceding Orders, Stipulations, Rulings, Directions, and Interim Awards." *Id.* ¶ 1. The Arbitrator awarded no damages to any party and ordered that each party bear its own costs, attorneys' fees, and expenses. *See id.* ¶ 2. The Arbitration Award "is in full settlement of all claims and counterclaims submitted to th[e] Arbitration," and "[a]ll claims not expressly granted herein [were] . . . denied." *Id.* at p.1.

## FIRST CAUSE OF ACTION

**(Confirmation of Arbitration Award Pursuant to the Federal Arbitration Act, 9 U.S.C. § 9)**

33. Gulfport repeats and incorporates each and every allegation contained in the paragraphs above as if fully set forth herein.

34. The FAA, 9 U.S.C. § 9, provides that any time within one year of an arbitration award, any party may apply to the court for an order confirming the award. Section 9 requires that the court confirm the award unless the award is vacated or modified as narrowly prescribed in Sections 10 and 11 of the FAA.

9

35. This action is timely brought within one year of the date that the Arbitration Award was issued.

36. The FAA sets out an extremely narrow set of circumstances in which an award may be vacated or modified, none of which apply to this case.

37. Accordingly, the Arbitration Award should be confirmed.

WHEREFORE, Gulfport respectfully requests judgment as follows:

a) An order pursuant to 9 U.S.C. § 9 confirming the May 10, 2020 Arbitration Award;

b) Entry of judgment thereon pursuant to 9 U.S.C. § 13; and

c) An order awarding such other and further relief as the Court deems just and proper.

Dated: May 15, 2020

Respectfully submitted,

*/s/ Daniel T. Donovan, P.C.*
Daniel T. Donovan, P.C. (0067833)
Ragan Naresh (*pro hac vice* forthcoming)
Holly Trogdon (*pro hac vice* forthcoming)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 389-5000
Fax: (202) 389-5200
daniel.donovan@kirkland.com
ragan.naresh@kirkland.com
holly.trogdon@kirkland.com

*Counsel for Gulfport Energy Corporation*