# EXHIBIT 1



**COMMERCIAL ARBITRATION RULES
DEMAND FOR ARBITRATION**

*For Consumer or Employment cases, please visit www.adr.org for appropriate forms.*

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| | |
|---|---|
| Name of Respondent: Gulfport Energy Corp. | Name of Representative (if known): Dan Donovan |
| Address: c/o Statutory Agent CSC-Lawyers Incorporating Service 50 West Broad Street, Suite 1800 | Name of Firm (if applicable): Kirkland & Ellis |
| | Representative's Address: 665 Fifteenth St. NW |
| City: Columbus   State: OH   Zip Code: 43215 | City: Washington   State: DC   Zip Code: 20005 |
| Phone No.:   Fax No.: | Phone No.: 202-879-5174   Fax No.: 1-202-879-5200 |
| Email Address: | Email Address: daniel.donovan@kirkland.com |

The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

Brief Description of the Dispute:

Respondent has failed to pay Claimant oil and gas royalties based upon the gross proceeds realized form the sale in violation of the parties Oil and Gas Lease.

| | |
|---|---|
| Dollar Amount of Claim: $ 10,000,000.00 | Other Relief Sought:<br>☐ Attorneys Fees  ☑ Interest  ☑ Arbitration Costs<br>☑ Punitive/ Exemplary  ☐ Other |
| Amount enclosed: $ 5,000.00 | In accordance with Fee Schedule: ☐ Flexible Fee Schedule  ☑ Standard Fee Schedule |

Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:

# Oil and Gas Lease interpretation under Ohio law.

| | |
|---|---|
| Hearing locale: Canton, Ohio | (check one) ☑ Requested by Claimant  ☐ Locale provision included in the contract |
| Estimated time needed for hearings overall:  hours or 5   days | Type of Business: Claimant: Oil and Gas Exploration and Prod.<br>Respondent: Farming |

Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other? No

| | |
|---|---|
| Signature (may be signed by a representative) /s/ Scott M. Zurakowski | Date: 3/27/17 |
| Name of Claimant: Shugert Family Investments, LLC | Name of Representative: Scott M. Zurakowski |
| Address (to be used in connection with this case):<br>63568 County Home Road | Name of Firm (if applicable): Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A. |
| | Representative's Address: 4775 Munson St. NW |
| City: Lore City   State: Ohio   Zip Code: 43755 | City: Canton   State: Ohio   Zip Code: 44718 |
| Phone No.:   Fax No.: | Phone No.: 330-497-0700   Fax No.: 330-497-4020 |
| Email Address: | Email Address: szurakowski@kwgd.com |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. At the same time, send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.

## THE AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| SHUGERT FAMILY INVESTMENTS, LLC<br>63568 County Home Road<br>Lore City, Ohio 43755<br><br>　　　　Claimant,<br><br>　　vs.<br><br>**GULFPORT ENERGY CORPORATION**<br>c/o Statutory Agent<br>CSC-Lawyers Incorporating Service<br>50 W. Broad Street, Suite 1800<br>Columbus, Ohio 43215<br><br>And<br><br>**RHINO EXPLORATION, LLC**<br>**c/o Foreign Statutory Agent**<br>Corporation Service Company<br>2711 Centerville Road, Suite 400<br>Wilmington, Delaware 19808<br><br>And<br><br>**RHINO EXPLORATION, LLC**<br>424 Lewis Hargett Circle, Suite 250<br>Lexington, Kentucky 40503<br><br>And<br><br>**UNKNOWN WORKING INTEREST OWNERS**<br>Names and Addresses Unknown<br><br>　　　　Respondents. | **Case No.**<br><br>**Claim filed for**: Arbitration |

01632293-1 / 27931.00-0001

## CLAIMANT'S DEMAND FOR ARBITRATION

Claimant, Shugert Family Investments, LLC ("Claimant"), for its Demand against Respondents, Gulfport Energy Corporation, Rhino Exploration, LLC, Unknown Working Interest Owners ("Respondents), states as follows:

## INTRODUCTION

1. This is a demand for arbitration by Claimant seeking damages arising, in part, out of a breach of four (4) oil and gas leases ("Leases") (**Exhibits 1-A, 1-B, 1-C, and 1-D** attached hereto and incorporated herein) entered into between Claimant's immediate predecessors and Respondents' immediate predecessor, with Patriot Land Company, LLC ("Patriot"). The Leases covered numerous parcels of real property, which are comprised of hundreds of acres located in Belmont County, Ohio ("Real Estate"). The Real Estate is further defined in the Leases.

2. Pursuant to the Leases, the Respondents were permitted to reduce the landowner's production royalties under the Leases only under certain circumstances. Claimant alleges herein that Respondents failed to properly pay landowner's production royalties under the Leases.

3. Claimant hereby seeks damages in an amount which exceeds $25,000, to be determined at trial, and Claimant is further entitled to a full accounting from Respondent of all of the deductions assessed against Claimant's royalties, the actual volumes of oil, gas, and other products produced under the Leases, and the actual price at which Respondents sold the oil, gas, and other products produced under the Leases. Claimant further seeks an award of punitive damages in an amount which exceeds $25,000 because, as will be detailed, Respondents' acts of conversion were undertaken knowingly, intentionally, and with malice towards Claimant, or in reckless disregard of Claimant's rights.

## PARTIES

4. Claimant is a limited liability company organized under the laws of the State of Ohio and is authorized to do business therein.

5. Upon information and belief, Respondent, Gulfport Energy Corporation, is a Delaware corporation registered as a foreign corporation to do business in the State of Ohio. It has engaged in sufficient contacts in the State of Ohio as described below establishing personal jurisdiction in Ohio.

6. Upon information and belief, Respondent, Rhino Exploration, LLC, is a Delaware limited liability company and is not licensed to do business in the State of Ohio. It has engaged in sufficient contacts in the State of Ohio as described below thereby establishing personal jurisdiction in Ohio.

7. Upon information and belief, Claimant reasonably believes that there are other individuals or entities who have obtained working interests in the oil and gas leaseholds and oil and gas wells at issue in this litigation. However, Claimant has been unable to determine the identities of these individuals.

## JURISDICTION / VENUE

8. Pursuant to the Leases, Claimant and Respondents expressly agreed to submit this matter to final and binding arbitration through the American Arbitration Association.

9. Claimant and Respondent agreed that, by submitting to arbitration, they gave up their right to litigate their dispute and their right to a trial by jury or to a judge.

## FACTS COMMON TO ALL COUNTS

10. In May of 2011, K & S Shugert Farm Family Limited Partnership entered the Leases with Patriot. (**Exhibits 1-A, 1-B, 1-C, and 1-D**)

11. In August of 2012, K & S Shugert Farm Family Limited Partnership conveyed to Claimant all oil, gas, and mineral rights that K & S Shugert Farm Family Limited Partnership owned in Belmont County, Ohio, via a quit claim deed recorded on September 13, 2012, at OR Book 343, Page 399 of the Deed Records of the Belmont County Recorder's Office. A true and accurate copy of that deed is attached hereto as **Exhibit 2** and made a part of this Demand. This conveyance included all mineral rights associated with the Real Estate and as a result, Claimant is the current lessor of the Leases.

12. Upon information and belief, Patriot's interests associated with the Leases were assigned amongst Respondents. Upon information and belief, Respondents are the co-owners of the lessee's rights associated with the Leases.

13. The Leases are comprised, generally, of two sections. The first section is the main body, which contains various terms, conditions, and obligations. Each of the Leases also contains an addendum, which is contained within the Exhibit "a" attached to each of the Leases. The addendums modified or added to the provisions of the first section of the Lease. Each of the addendums provides that if any of the terms contained within the addendum "conflict with or are inconsistent with the printed provisions or terms of" the Leases, the provision within the addendum controls.

### *Royalty Provisions*

14. The Leases provide how the oil and gas royalties are to be determined and paid to the respective lessors.

15. The Leases contain the same identical royalty provisions.

16. As to royalties for the sale of oil produced under the Leases, the main bodies of the Leases provide:

> 1. OIL: To deliver to the credit of Lessor a Royalty equal to fifteen percent (15%) of the gross revenue realized by Lessee for all oil and any constituents thereof produced and marketed from the Leasehold, less the cost to transport, handle, separate, meter, treat, process and market the oil.

17. As to royalties for the sale of gas produced under the Leases, the main bodies of the Leases provide:

> 2. GAS: To pay Lessor an amount equal to fifteen percent (15%) of the gross revenue realized by Lessee for all gas and the constituents thereof produced and marketed from the Leasehold, less the cost to transport, gather, dehydrate, compress, market, meter, treat and process the gas and any losses in volumes to point of measurement that determines the revenue realized by Lessee. Lessee may withhold Royalty payment until such time as the total withheld exceeds fifty dollars ($50.00).

18. The Leases' addendums expressly modify the above-referenced oil and gas royalty provisions.

19. The Leases' addendums contain the exact same royalty modification, titled "Market Enhancement Clause."

20. Each of the Leases' "Market Enhancement Clause" provides as follows:

> **Market Enhancement Clause** - It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, dehydrating and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

21. Based upon the plain language of the "Market Enhancement Clause," Respondents must pay Claimant its lessor's royalties based upon the gross proceeds realized from the sale of any oil, gas, or other products produced under the Leases.

22. Based upon the plain language of the "Market Enhancement Clause," any reference to deductions contained within that clause is subservient to the first sentence, which provides that no deductions will be taken from Claimant's royalties.

23. In the alternative, should it be determined that the "Market Enhancement Clause" does allow for some deductions, the text of that provision allows for deductions only when the lessee actually incurs certain post-production costs and only when certain post-production costs actually enhance the value of an already marketable product.

24. Under no circumstances is the lessee entitled to subject Claimant's royalties to deductions for costs relating to delivering and transforming a given product into its initial marketable form. Deductions are only allowed after the product has become marketable. Once marketable, then the associated post-production costs may only be deducted if it results in a net increase of price to the product.

25. Regardless of how the "Market Enhancement Clause" is interpreted, Claimant must be paid royalties based upon the actual price that the lessee receives for the sale of a given product. Under no circumstances can Claimant's royalties be based on a price that is less than the price for which the product was sold, i.e. at the point when the lessee relinquished ownership of the product.

26. The term "Produced Products" herein means oil, gas, and the constituents thereof produced.

27. The Leases do not waive any implied covenant that may be read into the Leases under Ohio law. Thus, the Leases contain covenants that are imposed upon lessees and which are implied in oil and gas leases by Ohio law, including but not limited to, the implied covenant to reasonably market oil and gas produced from the leaseholds and the implied covenant to conduct all operations with reasonable care and due diligence that affect the Claimant's royalty interests.

## *Oil and Gas Wells*

28. After Respondents acquired interests in the Leases, they moved to jointly develop the oil and gas rights associated with the various leaseholds. The Respondents' ultimate goal was to maximize any income that they could derive from the oil and gas rights.

29. Upon information and belief, Respondents entered into joint venture development agreements. Those agreements covered numerous oil and gas leases. The leaseholds would essentially pool together Respondents' various oil and gas lease assets. Respondents would then jointly develop acreage and pay their agreed-to-share of the costs. At all times, Respondents' lessee-lessor relationship was still subject to the express terms of the Leases.

30. Upon information and belief, once a particular oil and gas drilling unit was drilled and producing, Respondents would designate an operator to market the produced oil and gas and each of the Respondents would receive substantial financial revenue from those sales.

31. Respondents have drilled, operated, and/or participated in numerous oil and gas drilling well units which have utilized all or a portion of Claimant's property. Those operations are and have always been subject to the express terms of the Leases.

32. Upon information and belief, Respondents have included portions of the Real Estate into the following drilling and/or production well units and each well with State of Ohio well permit number known as: Cattle 210198 1A (API #3413208870000), Cattle 210198 2B (API #34013208860000), Cattle 210198 2C (API #34013208880000), Family 1-32H (API #34013207090000), Family 2-32H (API #34013207080000), Family 3-32H (API #34013207070000), Shugert 1-12H (API #34013206580100), Shugert 2-12H (API #34013206910000), Shugert 3-12H (API #34013206900000), Shugert 4-12H (API #34013206970000), Sandra 1-31H (API #34013207640000), Sandra 2-31H (API

#34013207650000), Swallie 210041-1C (API #34013207830000), and Swallie 210041-2B (API #34013207840000).

33. Upon information and belief, Defendant, Gulfport Energy Corporation, is the operator of the Claimant's leaseholds and wells and handles the accounting of and payment of the Claimant's royalties on behalf of the other Respondents and itself.

### *Improper Deductions*

34. Upon information and belief, since at least April 2013, Respondents have unlawfully reduced Claimant's production royalties by assessing and deducting both marketable and excessive costs for, including but not limited to, gathering, processing, dehydrating, transporting, marketing, compression, third-party deductions, fuel, and other additional charges and expenses, some or all of which are not permitted under the Leases.

35. Upon information and belief, since 2013, Respondents have made adjustments to Claimant's later royalty payments by decreasing, recouping, and clawing-back from said subsequent royalties prior royalty payments previously received by Claimant in prior months.

36. At all times, Respondents were aware that they were not entitled to make these non-enhancement deductions and recoupments or clawbacks of prior royalties, yet have continued to do so.

37. Respondents have been routinely assessing and collecting costs and expenses from Claimant's royalty payments for various items, including but not limited to, gathering and compression. Those deductions were not authorized by the Leases, because they did not enhance the value, rather those costs made the products marketable. The non-enhancement deductions resulted in Claimant being paid lower royalties based on higher deductions and on prices less than what Respondents received for the sales of the Produced Products.

38. Because Respondents failed to identify the specific nature of the deductions and/or recoupments and/or clawbacks on its royalty statements, Claimant was unable to discover the wrongful and improper deductions. Claimant is unable to adequately and accurately distinguish deductions to make Produced Products marketable, deductions to enhance the marketability of the Produced Products, and deductions that are excessive and beyond the terms of the Leases.

39. Claimants became aware of the wrongful deductions after requesting further information from Gulfport.

40. Based upon information and belief, Respondents caused the Produced Products to be sold at prices below market, which is not customary and usual in the oil and gas industry.

## COUNT ONE

### (Declaratory Judgment)

41. Claimant realleges and fully incorporates all allegations in this Demand as if fully rewritten herein.

42. Claimant and Respondents are persons as defined under R.C. 2721.01.

43. Questions of construction and/or validity of the legal rights and relations of the parties have arisen in relation to the Real Estate and mineral rights thereunder and the Leases and the parties hereto are entitled to a declaration of their rights, status and legal relations pursuant to R.C. 2721.03.

44. Ohio courts have the power to determine the rights and relations of the parties in relation to the Real Estate and the Leases pursuant to R.C. 2721.03.

45. Claimant is entitled to a declaration regarding matters set forth herein to resolve an actual controversy among the parties relative to the Real Estate and the Leases.

46. Absent issuance of the declaratory judgments referenced below, Claimant has no adequate remedy at law.

47. Claimant is entitled to a judicial declaration as follows:

   a. That pursuant to the Leases, Claimant's royalties shall not be subject to deductions, including pre and post-production costs, of any kind;

   b. That, pursuant to the plain language of the "Market Enhancement Clause," any reference to deductions contained within that clause is subservient to the first sentence of that clause, which provides that no deductions may be made against Claimant's royalties; or

   c. In the alternative to paragraph a, that pursuant to the Leases, the lessee may subject Claimant's royalties to deductions only when the lessee actually incurs post-production costs and only when the costs actually enhance the value of an already marketable product;

   d. The Leases do not permit the lessee to make deductions from Claimant's royalties for any costs associated with compression and gathering;

   e. The lessee is not entitled to subject Claimant's royalties to deductions for costs relating to the transforming of a given product into a marketable form. Any deductions can only be taken if the product was marketable before the associated cost was incurred.

   f. Regardless of how the "Market Enhancement Clause" is interpreted, Claimant must be paid royalties based upon the actual price that the lessee receives for the sale of a given product. Under no circumstances can Claimant's royalties be based on a price that is less than the price for which the given the product was sold, meaning the Respondents must calculate Claimant's royalties based on the price that Respondents obtained from the first true purchaser, other than Respondents, that took full ownership of the product after production.

   g. Regardless of how the "Market Enhancement Clause" is interpreted, the Leases and Ohio law do not permit Respondents, or any successor lessees, to recoup or clawback prior paid royalties from subsequent monthly royalty payments.

## COUNT TWO

### (Breach of Contract)

48. Claimant realleges and fully incorporates all allegations in this Demand as if fully rewritten herein.

49. Claimant and Respondents are parties to binding contracts, as evidenced by and embodied in the Leases.

50. Claimant has fully performed under the Leases.

51. Respondents' conduct, as described herein, constitutes a breach of the four Leases, which are contracts.

52. The Leases, which underlie the contractual relationship between Claimant and Respondents, are identical with regard to how Claimant's royalties are to be calculated and paid.

53. As previously discussed, Respondents have breached the Leases by, among other things, reducing Claimant's royalty payments through the use of: (1) improper deductions to make Produced Products marketable, and/or (2) excessive deductions, beyond what is usual and customary in the industry, and/or (3) recoupments or clawbacks of prior paid royalties, and/or (4) improper lower sales prices for Produced Products sold.

54. As a direct and proximate result of Respondents' breaches, Claimant has been damaged in an amount which exceeds $25,000, to be determined at trial, and Claimant is further entitled to a full accounting from Respondents of all of the deductions assessed against Claimant's royalties, the actual volumes of oil, gas, and other products produced under the Leases, and the actual price at which Respondents sold the oil, gas, and other products produced under the Leases.

## COUNT THREE

### (Conversion)

55. Claimant realleges and fully incorporates all allegations in this Demand as if fully rewritten herein.

56. Respondents wrongfully, intentionally, and unlawfully caused deductions to be taken from Claimant's royalty payments, as well as converting oil, gas, and other Produced Products without payment to Claimant.

57. Respondents were entitled to develop Claimant's minerals and receive funds relating to the production and sale of those Produced Products only in compliance with the Leases.

58. Claimant was entitled to receive the correct royalty payments, including the wrongfully deducted amounts, pursuant to the terms of the Leases.

59. Respondents have unlawfully retained and/or recouped or clawbacked royalty funds, without the consent of the Claimant and have deprived Claimant from exercising control over those additional royalty payments, while Respondents possessed and sold Produced Products owned by Claimant that were subject to the Leases.

60. Respondents have permanently deprived Claimant of those funds.

61. Respondents have permanently deprived Claimant of Produced Products without properly paying Claimant royalties pursuant to the terms of Claimant's consent to Respondents' acquisition of the same.

62. The funds are specific and readily ascertainable pursuant to oil and gas sales agreements, royalty statements, internal documents, and expense statements which are in the custody, possession, or control of Respondents.

63. Respondents obtained those funds through a coordinated and concerted scheme to underpay royalties and deprive Claimant of the same.

64. As a direct and proximate result of Respondents' conversion, Claimant has suffered damages in an amount which exceeds $25,000, the exact amount of which will be determined at trial. Claimant is entitled to recover from Respondents all damages and costs, including all amounts wrongfully converted, which are specific and readily ascertainable.

65. As detailed above, Respondents' acts of conversion were undertaken knowingly, intentionally, and with malice towards Claimant, or in reckless disregard of Claimant's rights, and as a result, Claimant is entitled to an award of punitive damages in an amount which exceeds $25,000.

## COUNT FOUR

### (Breach of Implied Covenants)

66. Claimant realleges and fully incorporates all allegations in this Demand as if fully rewritten herein.

67. The Leases do not waive the implied covenants imposed upon Respondents by operation of law.

68. Respondents have breached certain implied covenants imposed on the lessee under the Leases by operation of law, including but not limited to, failing to conduct their operations as would a reasonably prudent operator under the Leases and by failing to reasonably market oil and gas produced under the Leases.

69. As a direct and proximate result of Respondents' breaches, Claimant has suffered damages in an amount in excess of $25,000, the exact amount of which will be determined at trial.

## COUNT FIVE

### (Unjust Enrichment)

70. Claimant realleges and fully incorporates all allegations in this Demand as if fully rewritten herein.

71. Claimant pleads this claim in the alternative to Claimant's breach of contract claim (Count Two).

72. Respondents have unjustly enriched themselves at the expense of Claimant.

73. Respondents, through their policies and actions, have reaped significant financial benefits by effectuating a scheme which deprived Claimant from the full amount of royalties due to it under the Leases.

74. Respondents benefited from that scheme by: (1) increasing their profits and distribution payments by decreasing and underpaying the amount of royalties that Respondents paid

to Claimant, (2) as well as Respondents' recouping or clawing-back prior paid royalties from subsequent monthly royalty payments, thereby retaining a larger portion of the gross proceeds received, and (3) by selling Produced Products at artificially low sales prices below market.

75. Respondents accepted and received the benefit of royalty monies which were due and payable to Claimant. It would be unjust and inequitable to allow Respondents to retain those royalty monies because Respondents procured those monies through conversion and/or false pretenses and/or unjust enrichment.

76. As a direct and proximate result of Respondents' unjust enrichment, Claimant has been damaged in an amount which exceeds $25,000, the exact amount of which will be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, on the basis of the allegations and claims herein, Claimant requests:

1. The judicial declarations as detailed in Count One and incorporated by reference as if restated herein;

2. That Claimant recovers full compensatory damages for Counts Two, Three, Four, and Five in this case against Respondents, jointly and severally, in an amount which exceeds $25,000, the amount of which will be determined by the jury;

3. That Claimant recovers punitive damages for Counts Three and Five in this case against Respondents, jointly and severally, in an amount which exceeds $25,000, the amount of which will be determined by the jury;

4. A full accounting under the terms detailed in Count Two;

5. That Claimant be awarded pre-judgment and post-judgment interest on the amount of the judgment;

01632293-1 / 27931.00-0001          14

6. That Claimant be awarded reasonable attorneys' fees and the costs of this action; and

7. That Claimant be awarded any additional equitable or legal relief, including injunctive relief, which is deemed just and proper.

          Respectfully submitted,

_/s/ Scott M. Zurakowski_
William G. Williams (0013107),
Scott M. Zurakowski (0069040), and
Matthew W. Onest (0087907), of
KRUGLIAK, WILKINS, GRIFFITHS
 & DOUGHERTY CO., L.P.A.
4775 Munson Street, N.W./P.O. Box 36963
Canton, Ohio  44735-6963
Phone:  (330) 497-0700/Fax:  (330) 497-4020
ATTORNEYS FOR CLAIMANT